# TESTAMENTARY TRUST of HARRY W. CHILD, Deceased.

No. 11601.
Submitted June 11, 1969.
Decided July 17, 1969.
457 P.2d 447.

Felt, Speare & Thompson, Billings, James R. Felt and James W. Thompson, argued, Billings, for appellant.

Weir, Gough & Booth, Helena, Newell Gough, Jr., appeared, Helena, Crowley, Kilbourne, Haughey, Hanson & Gallagher,

Billings, Garlington, Lohn & Robinson, Missoula, Small & Cummins and Carl Hatch, Helena, Floyd O. Small, argued, Helena, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment terminating a trust. On October 26, 1923, Harry W. Child created a testamentary trust. Harry W. Child died in 1931. His will made some specific bequests to family members, employees and friends. The twelfth paragraph of such will provided:

"TWELFTH: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath to my wife, Adelaide Dean Child, my son-in-law William M. Nichols and my old friend and business associate Albert L. Smith of Helena, Montana, and to their successors, for and during the life of the survivor among my said wife, my mother, Sarah E. Child, my sister, Katherine C. Bach, my son Huntley Child and until the youngest surviving among the children of my son Huntley living at my death and herein named shall reach the age of forty years or sooner dies; In Trust nevertheless, for the following uses and purposes, that is to say:

"1. To take, hold and manage said property, and from the net income therefrom to pay,

"(a) To my mother, Sarah E. Child, of Seattle, Washington, or for her care and comfort, the sum of One Hundred and Fifty Dollars per month so long as she shall live;

"(b) Pay to my sister Katherine C. Bach of Pasadena, California, the sum of One Hundred Dollars per month so long as she shall live;

"(c) Pay to Marion Child, Huntley Child (Junior) and Elizabeth Child, children of my son Huntley Child, the sum of Two Hundred Dollars per month, share and share alike, until they shall respectively reach sixteen years of age, and

thereafter, so long as my said wife shall live, to pay to each of them then living the sum of Fifteen Hundred ($1500.00) Dollars per annum;

"(d)  Pay to my son Huntley Child the sum of One Hundred and Fifty Dollars per month until he shall reach fifty years of age or sooner dies;

"(e)  So long as my wife, Adelaide Dean Child, shall live, the remainder of the annual net income from said trust estate, remaining after making the annual payments hereinabove specified, shall be paid to her annually. Upon the death of my said wife, said remainder of the annual net income shall be paid annually one-sixteenth thereof to my son Huntley Child so long as he shall live, three-sixteenths thereof to the above named children of said son living at the death of my said wife, share and share alike, and to the issue of any deceased child above named of my said son dying leaving issue, such issue to take per stirpes the share of the parents and not per capita, so long as this trust shall endure, and the remainder of said net income to be paid to my daughter Ellen Dean Child Nichols, and to her heirs, so long as this trust shall endure.

"2.  Upon the termination of the trust term hereinabove specified, to deliver, transfer and convey the trust property remaining in the hands of my Trustees, one-fourth thereof, share and share alike to the above named children of my son Huntley Child, then living, and to the issue of any dying leaving issue, such issue to take per stirpes the share of the parent and not per capita; and all the rest, residue and remainder of said trust property remaining in the hands of the Trustees shall be transferred, conveyed and delivered to my daughter Ellen Dean Child Nichols, and to her heirs, free of this trust. * * *"

From the foregoing quote of paragraph Twelfth, the trial court found:

"(8)  In Clause Twelfth of his Last Will and Testament, Harry W. Child created a trust to pay the income therefrom

to various individuals for designated periods of time; that said payments of income were to be made for life, to his mother, Sarah E. Child, his sister, Katherine C. Bach; his wife, Adelaide Dean Child; and his son, Huntley Child, Sr. Also, following the death of Adelaide Dean Child, income from three-fourths of said trust property was to be paid to Ellen Dean Child Nichols, and to her heirs, until termination of said trust according to its terms. Following are dates of death of persons involved—mother, Sarah E. Child, before 1931; Harry W. Child, on February 4, 1931; sister, Katherine C. Bach, in 1931; his wife, Adelaide, on October 17, 1949; and, his daughter, Ellen Dean Child Nichols, on October 13, 1966."

The trial court also found:

"(9) By clause Sixth of his Will, Harry W. Child released and discharged all debts and obligations owed to him by his son, Huntley, Sr. By Clause Twelfth of his Will, he created the trust here involved, and divided the trust estate between the two family branches of his two lineal descendants, one-fourth to the lineal descendants of the son, Huntley, Sr., and three-fourths to the lineal descendants of Ellen Dean Child Nichols. Huntley Child, Sr., does not now have or own any interest whatsoever in the trust estate. Any equity or interest that he had in said trust has been fully and finally terminated. The three children of Huntley, Sr., that is, Marion Child Sanger, Elizabeth Child Pomeroy, and Huntley Child, Jr., now are the owners of, and receiving all income from that one-fourth interest in the trust estate to be ultimately distributed to them on final termination under the terms of said Will. By voluntary action, confirmed by decree of this Court several years ago, Huntley Child, Jr. transferred one-half of his interest in the corpus of said trust to Emily Child Vucanovich. By the terms of the Will of Harry W. Child, confirmed by the Decree of this Court duly given and made herein on July 26, 1968, Adelaide Nichols Low, John Q. Nichols, and Dean Nichols, are the owners of the remaining three-fourths of the trust estate

which will be distributed to them in accordance with said Decree of termination of said trust as to said three-fourths interest."

By October 17, 1949, mother, sister and wife were all dead, whereupon two separate estates emerged within the single trust as shown in pragraph 9 of the trial court's findings. Also, as referred to in paragraph 9 above, on October 16, 1958, there was a decree in the trial court wholly divesting Huntley, Sr., of any interest in the trust estate, and confirming that Huntley, Jr. had conveyed one-half of his residuary corpus (but not income) to Emily Child Vucanovich.

Until August of 1966, the primary investment for the bulk of the trust funds was in the Yellowstone Park Company. It was not feasible to divide or distribute the trust assets. On that date the Yellowstone Park Company was sold, and since that date the assets have been diversified in cash and negotiable securities totaling over $6,000,000. The two distinct interests referred to above can now be safely and economically separated.

Daughter Ellen died on October 13, 1966. Thereafter one of the trustees filed a petition for a determination of ownership of the interest of Ellen Dean Child Nichols, her estate and her heirs in the trust estates. Appearances were made by a representative of her estate, by all the income beneficiaries and by the ascertained corpus beneficiaries.

The Nichols heirs petitioned for termination and distribution, directly to them, of the Nichols family ¾ portion of the trust.

Emily F. (Child) Vucanovich, one of the corpus beneficiaries of the Child family ¼ portion of the trust, petitioned for termination and distribution of the Child family portion. At this time, all of the ascertained corpus beneficiaries were brought into the case.

The court by order dated July 26, 1968, determined the ownership of the Nichols interest to be in her heirs (her three

children) and not in her estate. By judgment dated October 30, 1968, the court ordered the entire trust terminated and distributed as of November 1, 1968.

At the proceedings, since the death of Ellen Nichols in 1966, Huntley Child, Jr., Marion Child Sanger, and Elizabeth Child Pomeroy have resisted the termination of the trust. Child, Sanger and Pomeroy, it will be remembered are the children of Huntley Child, Sr. Child has three children, who are termed "contingent beneficiaries". They have not appeared in any manner as appellants nor did they resist termination of the trust. Sanger has three children and Pomeroy has two children.

Thus, the five grandchildren out of eight grandchildren of Huntley Child, Sr., have what is termed a contingent interest; for example, if Marion Child Sanger predeceased her father, Huntley, Sr., then Marion's children would begin receiving her share of the trust income, and on Huntley, Sr.'s death, they would take her share of the principal; this, of course, if the trust still continues.

The other complicating factor, and in a sense, the real complicating factor is the "one-half interest in the remainder to be distributed to Huntley Child, Jr. upon termination of the trust" as agreed upon between Huntley Child, Jr. and Emily Vucanovich in the divorce decree of 1953. That decree, among other things, provided:

"6. Husband further agrees that as a part of the settlement with Wife, he has executed and has herewith delivered to Wife an absolute and irrevocable assignment of one-half (½) of all his right, title and interest in his share of the Harry W. Child Trust, reserving to himself, however, the income from said share of said trust.

"And in conjunction with, and in addition to, said aforementioned assignment of interest in said Trust Estate (but without any intention of changing or abrogating said formal assignment of interest in said trust, which has been executed

by Husband, accepted by the Trustees, and delivered to Wife, and which is to be and remain in force and effect), Husband herein, as a part of this agreement, has transferred sold, assigned and set over, and by these presents he does transfer, sell assign, set over and deliver unto Emily F. Child, Wife herein, an undivided one-half (½) of all of the right, title, equity or interest that Husband has, or owns in the aforementioned trust or trust estate, established by and through the last will and testament of said Harry W. Child, deceased; it is intended, by this agreement along with said aforementioned separate formal assignment of interest, and as of the date hereof, to transfer and assign to said Emily F. Child, her heirs and assigns, a one-half interest and equity of all the right, title, interest or equity of whatsoever nature that Husband may now have, or own, in said trust, or trust estate, or otherwise; and from and after the date hereof said Wife, shall be, for all purposes, except as herein otherwise provided, the full and absolute owner of the interest or equity in said trust and trust estate as herein transferred and assigned to her; and with the right in said Wife *upon termination or distribution of said trust,* to have her interest and portion of the principal or corpus of said trust estate, as herein designated, distributed directly to her, as the owner thereof; and, except for payment of annual income thereon to Husband during the term of said trust as hereinabove specified, said Wife, Emily F. Child, shall, upon and after the execution of this instrument, be in all respects and for all purposes, a beneficiary of said trust and trust estate, and with all the rights and privileges thereof, and with the right, as such beneficiary, to receive all of the benefits accruing out of the interest hereby assigned to her, and to be considered, in all respects, as a regular beneficiary under said trust to the extent of the interest herein assigned to her;—that is to say a full one-half of all the right, title, equity, or beneficial interest of whatsoever nature that Husband may now have, or own, in said trust or

trust estate, together with all benefits or increases in value hereafter accruing to the same." (Italics supplied).

The divorce decree also provided for alimony payments until Emily remarried, which she did.

Thus, what we have referred to as the complicating factor is the assignment by Huntley, Jr. of ½ of his share, reserving, however, the income until "termination or distribution" of said trust. Huntley, Jr. would like to keep the income until the death of Huntley, Sr. Emily Vucanovich would like to have the termination now.

The appellants, thus, insist on measuring the term of the trust by the life of Huntley, Sr. We shall repeat the term of paragraph Twelfth as it applied:

"* * * for and during the life of the survivor among my said wife, my mother, Sarah E. Child, my sister, Katherine C. Bach, my son, Huntley Child, and until the youngest surviving among the children of my son Huntley living at my death and herein named shall reach the age of forty years or sooner dies, * * *"

Those named were affected as follows:

| Name | Relationship to Harry W. Child | Will Provision for Termination as Measuring Life | Date of Termination as Measuring Life |
|------|-------------------------------|--------------------------------------------------|---------------------------------------|
| Adelaide D. Child | Wife | Death | Died in 1949 |
| Sarah E. Child | Mother | Death | Predeceased Harry |
| Katherine C. Bach | Sister | Death | Died in 1931 |
| Huntley Child, Sr. | Son | Death | Still living |
| Marion Child | Granddaughter | Death or age 40 | Became 40 in 1949 |
| Huntley Child, Jr. | Grandson | Death or age 40 | Became 40 in 1951 |
| Elizabeth Child | Granddaughter | Death or age 40 | Became 40 in 1954. |

The order of October 30, 1968, herein appealed, would have the effect of terminating Huntley Child, Sr. as a measuring life as of November 1, 1968.

Ever since Elizabeth Child's 40th birthday on March 9, 1954,

the only measuring life of this trust has been Huntley Child, Sr.

We reiterate that Huntley Child, Sr. was completely divested of any interest as noted in the decree of October 16, 1958. The appellants, however, insist that his life is the only measuring life; and that the trust has continued since March 9, 1954 when Elizabeth became 40 years of age, only because Huntley, Sr. continued to live. However, as we have heretofore shown, the trust could not, as a practical matter, have been terminated until 1966 when the assets were sold.

Previous actions of the trustees, approved by court decrees, permitted assignments of parts of interests by Ellen Dean Nichols in 1949, 1950 and 1953. This was as to both principal and income. As to Huntley, Jr., he too, assigned, the trustees approved, as did the court.

■ With this background, our problem is whether a trust can be terminated where the last surviving measuring life no longer has any interest in the trust, but where one or more beneficiaries do not consent to termination.

In approaching the answer to the problem, we have a somewhat strange position of appellants agreeing to termination of ¾ of the trust—even though the measuring life is the same—but disagreeing as to the termination of the ¼ interest because it affects them. Along with this position, the same protesting beneficiaries have either dealt with their trust shares as their "in-being" property or acquiesced in others doing so.

Two rules of trust appear. Appellants rely on the rule stated in Restatement of Trusts 2d § 340, as follows:

"(1) Except as stated in Subsection (2) and in §§ 335 and 336, if one or more of the beneficiaries of a trust do not consent to its termination or are under an incapacity, the others cannot compel the termination of the trust, except in accordance with the terms of the trust.

"(2) Although one or more of the beneficiaries of a trust do not consent to its termination or are under an incapacity,

the court may decree a partial termination of the trust if the interests of the beneficiaries who do not consent or are under an incapacity are not prejudiced thereby and if the continuance of the trust is not necessary to carry out a material purpose of the trust."

The appellants then go on to argue that the exception in subsection (2) does not apply to the termination of the Child family ¼ interest, because the interest of the Child beneficiaries who do not consent or are under capacity will be prejudiced:

(1) Huntley Jr. will lose ½ of his trust income.

(2) Marion Sanger's three and Elizabeth Pomeroy's two children will be cut off from the *possibility* of participating in the trust income or principal because Marion's and Elizabeth's children take their respective shares if they should die before Huntley, Sr. Here, again, the appellants insist that the measuring life of Huntley, Sr. is the sole criterion of the trust termination. The appellants go on to argue that the 5th generation, grandchildren of Marion, Huntley, Jr., and Elizabeth also have contingent interests to be protected.

The second rule of trusts to be considered is—a trust is extinguished by the entire fulfillment of its object, or by such object becoming impossible or unlawful. Section 86-601, R.C.M.1947; Restatement of Trusts 2d § 335.

What then was the object or purpose of the trust? A reading of the provisions of the trust make it clear, as the trial court found, that payment of net income annually to certain life beneficiaries was the object. The corpus of the trust estate was to be maintained intact for the benefit of the remaindermen beneficiaries, and the trust estate automatically terminated at the death of the last survivor of the intermediate life income estates. In other words, the trust terminated on the same same date the income payments terminated. Under paragraph Twelfth, previously quoted, it seems clear that the only purpose of the trust was the payment of income to his wife,

mother, sister, and his son Huntley, Sr., during their lifetime, and that the trust was to endure only so long as the income was payable to some one of those four individuals. The testator naturally expected that period of time to be measured by the duration of their lives. The mother, sister and wife are long since deceased, and the right of Huntley, Sr. to receive income payments has been forfeited and terminated.

So, the sole purpose and object of the trust, payment of income for life to testator's wife, mother, sister and son, has either been fulfilled or no longer possible of fulfillment. Huntley, Sr. is out, and the youngest child named, Elizabeth, is long past 40 years of age.

Under sections 91-201, 91-202 and 91-205, R.C.M.1947, the intent of the testator has been fulfilled.

Appellants also urge that the divorce decree of 1953 and its property agreement dated April 24, 1953, is being violated in that the parties agreed that Huntley, Jr. had the income until the death of Huntley, Sr. which would terminate the trust. Sixteen years later, Huntley, Sr. is alive at age about 84. Appellants urge that the death of Huntley, Sr. is the *natural* termination date. Again, the entire argument of appellants is based on the measuring life of Huntley, Sr. as being the sole determinative factor of the termination of the trust. We have heretofore discussed the fact that the termination could and does happen by the impossibility of fulfillment and the entire fulfillment of its object. Thus, the divorce property settlement, written and agreed to as it was, depended upon legal termination of the trust, not on just the death of a measuring life. We recognize appellants' argument that there is still a Huntley, Sr. lifetime interest—but that he just doesn't own it now. However, this does not change our view of the testator's intent as expressed above.

We find that the district court was correct in finding that the trust should be terminated, both as to the ¾ Nichols in-

terest and as to the ¼ Child interest. Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN CONWAY HARRISON, HASWELL and BONNER, concur.